# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

DETRA DIANE M.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

3:17-cv-01971-BR

OPINION AND ORDER

LISA R.J. PORTER
JP Law P.C.
5200 S.W. Meadows Rd., Ste 150
Lake Oswego, OR 97035
(503) 245-6309

        Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

---

   [1] In the interest of privacy this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a nongovernmental party's immediate family member.

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**LISA GOLDOFTAS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3858

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Detra Diane M. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

On August 8, 2014, Plaintiff protectively filed her

application for DIB and SSI benefits.  Tr. 16.[2]  Plaintiff

alleges a disability onset date of July 22, 2014.  Tr. 16.

Plaintiff's application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on January 19, 2017.  Tr. 16, 37-64.  Plaintiff and a

vocational expert (VE) testified at the hearing.  Plaintiff was

represented by an attorney at the hearing.

On March 7, 2017, the ALJ issued an opinion in which he

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 30.  Plaintiff requested review by the Appeals

Council.  On October 13, 2017, the Appeals Council denied

Plaintiff's request to review the ALJ's decision, and the ALJ's

decision became the final decision of the Commissioner.

Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On December 12, 2017, Plaintiff filed a Complaint in this

Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on June 23, 1978.  Tr. 28.  Plaintiff

---

[2] **Error! Main Document Only.**Citations to the official
transcript of record filed by the Commissioner on June 11, 2018,
are referred to as "Tr."

was thirty-six years old on her alleged disability onset date.
Tr. 28. Plaintiff attended school through the ninth grade.
Tr. 28, 42-43. Plaintiff has past relevant work experience as a
cashier and stock clerk. Tr. 45.

Plaintiff alleges disability due to chronic post-traumatic
stress disorder (PTSD), severe anxiety, depression, "inability
to accept change," and avoidance disorder. Tr. 67.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence. After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence. *See* Tr. 22-27.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012). To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months." 42
U.S.C. § 423(d)(1)(A). The ALJ must develop the record when
there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence.  *McLeod v. Astrue,*
640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,*
276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,*
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion."  *Molina,* 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690
(9th Cir. 2009)).  It is more than a mere scintilla [of
evidence] but less than a preponderance.  *Id.* (citing *Valentine,*
574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's
testimony, resolving conflicts in the medical evidence, and
resolving ambiguities.  *Vasquez v. Astrue,* 572 F.3d 586, 591
(9th Cir. 2009).  The court must weigh all of the evidence
whether it supports or detracts from the Commissioner's
decision.  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th
Cir. 2008).  Even when the evidence is susceptible to more than
one rational interpretation, the court must uphold the

Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in

the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here
the burden shifts to the Commissioner to show a significant
number of jobs exist in the national economy that the claimant
can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068,
1071 (9th Cir. 2010). The Commissioner may satisfy this burden
through the testimony of a VE or by reference to the Medical-
Vocational Guidelines (or the grids) set forth in the
regulations at 20 C.F.R. part 404, subpart P, appendix 2. If
the Commissioner meets this burden, the claimant is not
disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since July 22, 2014, Plaintiff's
alleged disability onset date. Tr. 18.

At Step Two the ALJ found Plaintiff has the severe
impairments of "mental health conditions described variously as
depression, anxiety, PTSD, and intellectual disability
disorders." Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of

the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 19-22. The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: "[S]he is limited to simple, routine tasks, SVP 1 or 2 type tasks, with no public contact, and superficial contact with coworkers." Tr. 20.

At Step Four the ALJ concluded Plaintiff is unable to perform her past relevant work. Tr. 28.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as janitor, laboratory helper, and warehouse worker. Tr. 29. Accordingly, the ALJ found Plaintiff is not disabled. Tr. 29-30.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to apply the Listing criteria to Plaintiff's impairments, (2) failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony, (3) improperly rejected the testimony of third-party lay witnesses, (4) failed to provide clear and convincing evidence for rejecting the opinions of medical providers, and (5) failed to incorporate all medical findings into Plaintiff's RFC.

**I.    The ALJ did not err at Step Three when he found Plaintiff's impairments do not meet Listing requirements.**

Plaintiff contends the ALJ erred by failing to apply the Listing requirements of 12.04 (bipolar and related disorders), 12.05 (intellectual disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) to Plaintiff.

**A.    Standards**

As noted, at Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724.   Step Three "streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bown v. Yuckert*, 482 U.S. 137, 153 (1987).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.   To *equal* a listed impairment, a claimant must establish symptoms, signs, and

laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)(emphasis in original). *See also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2014).

### B. Analysis

To satisfy the criteria of the Listings, Plaintiff's mental disorders must result in "extreme limitation of one, or marked limitation of two" areas of mental functioning. 20 C.F.R. part 404, subpart P, appendix 1, at 12.00F2.

As noted, at Step Three the ALJ found Plaintiff's medically determinable impairments do not meet or medically equal one of the Listed Impairments. Specifically, the ALJ provided a detailed analysis as to why Plaintiff's mental impairments or combination of impairments do not meet or medically equal the severity of a listed impairment. Tr. 19-22. The ALJ cited evidence in the record and found Plaintiff has moderate limitations in each of the four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Tr. 20-21. For example, Kenneth C. Dudley, Ph.D.,

performed a neuropsychological examination of Plaintiff in March 2013. Tr. 565-74. Although Dr. Dudley opined Plaintiff would struggle to learn information, he also concluded Plaintiff would be able to retain and to apply that information. Tr. 573-74. Plaintiff alleged she does not get along well with others, and Dr. Dudley noted she "will experience difficulties in interpersonal relationships and functioning." Dr. Dudley, however, concluded "these [factors] did not rise to a level where they were felt to interfere with social or occupational functioning." Tr. 573.

The ALJ also found Plaintiff does not meet the Listing requirements of listing 12.05 for intellectual disorders. Based on Plaintiff's own testimony and function report, the ALJ found Plaintiff could participate in standardized testing of intellectual functioning and is not dependent on others for her personal needs. Tr. 21, 49-50, 244. Richard M. Kolbell, Ph.D., an examining psychologist, also noted Plaintiff is "independent in all basic and advanced" activities of daily living. Tr. 388. Listing 12.05 also requires a full-scale or comparable IQ score of no higher than 75. 20 C.F.R. part 404, subpart P, appendix 1, listing 12.05B. The ALJ found Plaintiff does not meet this listing requirement because her full-scale IQ score is 77.

Tr. 21-22, 571.

Although Plaintiff cites other evidence in the record in opposition to the ALJ's determination, Plaintiff does not identify any specific error in the ALJ's finding at Step Three. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

On this record the Court concludes the ALJ did not err at Step Three because the medical records do not reflect Plaintiff meets the requirements of Listings 12.04, 12.05, 12.06, or 12.15 and the ALJ's determination is supported by substantial evidence in the record.

## II. The ALJ did not err when he found Plaintiff's testimony was not fully credible.

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

### A. Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). The claimant is not required to show that his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). General assertions that the claimant's testimony is

not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### B.   Analysis

The ALJ discounted Plaintiff's testimony regarding her symptoms on the ground that Plaintiff's testimony was not consistent with the medical evidence. Tr. 23.

Plaintiff alleged she is unable to work due to mental issues as a result of her PTSD, anxiety, and depression. She asserted she has difficulty being around others and would have difficulty interacting appropriately with supervisors. Plaintiff also contended she has difficulty understanding and remembering instructions and concentrating. Plaintiff testified she could not work due to "unexplained persistent headaches," and she was unable to get of bed for a year beginning in 2014 due to these headaches. Tr. 19, 475.

An ALJ may consider medical reports of improvement when evaluating a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ, however, noted evidence that Plaintiff's treatment did not

support Plaintiff's testimony regarding the severity of her impairments. For example, the ALJ noted that Pamela Miller, Ph.D., Plaintiff's treating psychologist, recommended primarily conservative treatment, including deep-breathing exercises, physical exercise, and "gratitude practice," and Plaintiff was not on any psychiatric medications after a year following her alleged disability onset. Tr. 24, 604, 654, 829-30, 832, 835, 945, 849.

The ALJ also found Plaintiff's mental symptoms "waxed and waned" and noted the record included references to numerous situational stressors as the primary cause of these symptoms such as the fact that she lost custody of her son and that she left her employment at WalMart because of a "medical emergency" in her family. Tr. 25, 45, 532. Evidence of inconsistent reporting supports a finding that Plaintiff's allegations are not fully credible. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Again, Plaintiff does not identify any specific error in the ALJ's finding.

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's symptom testimony and found it was not fully credible because the ALJ provided clear and

convincing reasons supported by substantial evidence in the record for doing so.

## III. The ALJ gave germane reasons for discounting lay-witness testimony.

Plaintiff contends the ALJ erred when he failed to provide reasons that are germane to the lay-witness statements of Alfred Bolte, Plaintiff's friend, regarding Plaintiff's limitations.

### A.    Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006). Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness-basis.

Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue,*

493 F. App'x 866 (9th Cir. 2012).

**B.  Analysis**

Bolte stated in his Third-Party Report that Plaintiff has "blackouts and anxiety" that limit Plaintiff's ability to work.  Tr. 251.  Plaintiff points to one instance reflected in Plaintiff's treatment records that indicates Plaintiff "sometimes will go into black out rages when she gets 'pushed too far.'"  Tr. 702.  Plaintiff contends this record supports Bolte's testimony and that the ALJ failed to offer a germane reason for rejecting it.  As a result of the ALJ's alleged error, Plaintiff asserts the ALJ could have reached a different conclusion regarding Plaintiff's disability if he had properly credited Bolte's testimony.

The ALJ gave "little weight" to Bolte's statement on the ground that this "evidence does not show more than one episode of losing consciousness, which does not support limiting [Plaintiff] because of this condition."  Tr. 28.  The ALJ also noted Bolte had limited interaction with Plaintiff and his statements are inconsistent with the medical record.  Tr. 28.

On this record the Court concludes the ALJ gave "germane" reasons for discounting the lay-witness statements of Bolte.

**IV. The ALJ properly evaluated the medical-opinion evidence.**

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for rejecting the medical opinions of Dr. Dudley, an examining neuropsychologist, and Dr. Miller, Plaintiff's treating psychologist, and the statements of Taunie Leash, a social support specialist.

**A. Standards**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, the court must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given

to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Although the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Ryan,* 528 F.3d at 1198. "The weight afforded a nonexamining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his

own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

**B. Analysis**

**1. Dr. Dudley**

Plaintiff asserts Dr. Dudley found Plaintiff was "impaired intellectually and also suffered from impaired memory" and "experiences difficulties in interpersonal relationships and functioning." Pl.'s Brief at 30 (citing Tr. 573). Plaintiff contends the ALJ failed to "acknowledge that Dr. Dudley agreed with the rest of [Plaintiff's] treating physicians." *Id.* The ALJ, in fact, gave Dr. Dudley's opinion "significant weight." Tr. 27.

As noted, Dr. Dudley performed a neuropsychological examination in March 2012 and noted Plaintiff's memory functioning was borderline and Plaintiff would struggle to learn information. Dr. Dudley, however, opined Plaintiff would retain and apply any information that she learned. Tr. 571-74. The ALJ concluded Dr. Dudley's opinion was supported by the clinical findings in his report. Tr. 27. The ALJ found Plaintiff has severe mental impairments, including intellectual disability disorder, and he reasonably accounted for Plaintiff's mental impairments in the RFC limitations to "simple, routine tasks."

Tr. 22.

On this record the Court concludes the ALJ did not discount Dr. Dudley's opinion and, in fact, based his evaluation of Plaintiff's RFC on Dr. Dudley's assessment of Plaintiff's impairments.

### 2. Dr. Miller

Plaintiff asserts the ALJ "provided little weight to Dr. Miller's opinion that [Plaintiff] would not get along with supervisors despite the fact that each treating provider opined that this would be so." Pl.'s Brief at 30.

The ALJ, however, gave portions of Dr. Miller's opinion "significant weight." Tr. 27. The ALJ only discounted Dr. Miller's opinion that Plaintiff would have substantial difficulty getting along with supervisors on the grounds that (1) it was inconsistent with Plaintiff's past work history and (2) Plaintiff's positive response to mental-health treatment suggests Plaintiff "would be able to regulate her emotions well enough to interact appropriately with supervisors." Tr. 27. Plaintiff fails to show how the ALJ's decision is inconsistent with Dr. Miller's assessment.

The ALJ also relied on the opinions of state-agency psychologists, Winifred C. Ju, Ph.D., and Bill Hennings, Ph.D.,

who both opined Plaintiff is not significantly limited in her ability to accept instructions and to respond appropriately to criticism from supervisors.  Tr. 27, 75, 102.

On this record the Court concludes the ALJ did not err in his evaluation of Dr. Miller's opinion.

### 3.   Taunie Leash

Leash is a social service specialist who has worked with Plaintiff and her family since 2013.  In January 2017 Leash submitted a letter to the ALJ in which she stated she is not a mental-health therapist, but she has observed Plaintiff's difficulties "regulating and controlling her emotions." Tr. 316-17.  Leash stated she has seen Plaintiff "being very anxious, tearful and sad and then to very angry"; Plaintiff "tends to struggle to manage herself when hearing difficult information"; and Plaintiff "is quick to anger and while angry will lash out verbally."  *Id.*

Plaintiff contends the ALJ erred when he improperly disregarded Leash's accounts of her interactions with Plaintiff.

### a.   Standards

A social services specialist is not an "acceptable medical source" of medical evidence but is considered "other sources."  20 C.F.R. §§ 404.1502, 416.902.

"[O]nly licensed physicians and certain other qualified
specialists are considered 'acceptable medical
sources.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.
2012)(citation, brackets, and footnote omitted).  Opinions
from "not acceptable" medical sources, however, "are important
and should be evaluated on key issues such as impairment
severity and functional effects . . . ."  SSR 06-03p.  The ALJ
may reject the opinion of other sources such as social workers
by providing germane reasons for doing so.  *Turner v. Comm'r of
Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

      **b.   Analysis**

        The ALJ gave Leash's letter "little weight" and
found her observations were not "entirely reliable."  Tr. 28.
The ALJ indicated Leash's statements are generally inconsistent
with the reports of Dr. Miller and with the records of Kimberly
Humann, M.D., Plaintiff's psychiatrist, who referred to
Plaintiff in a report in May 2016 as "stable from a mental
health standpoint."  Tr. 28, 745.  The ALJ also disregarded
Leash's statement on the ground that it was inconsistent with
Plaintiff's "demonstrated level of functioning in activities of
daily living."  Id.

        On this record the Court concludes the ALJ gave

legally sufficient reasons for discounting the statements of Leash.

## V. The ALJ properly evaluated Plaintiff's RFC.

Plaintiff contends the ALJ erred by failing to consider all of the medical evidence when assessing Plaintiff's RFC.

### A. Standards

The ALJ's evaluation of a claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

A claimant's RFC represents the "most that an individual can do despite his or her limitations or restrictions" resulting from medically determinable impairments. SSR 96-8P, at *4. *See also* 20 C.F.R. § 416.945.

"The RFC must be based on *all* the relevant evidence in the case record" including medical history, medical signs, and laboratory findings, lay evidence, recorded observations, medical-source statements, and the effects of the claimant's symptoms. SSR 96-8P, at *5 (emphasis in original). To determine a claimant's exertional and nonexertional capacity, the ALJ must give "careful consideration" to "any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8P, at *5-*6.

**B.    Analysis**

As noted, the ALJ concluded Plaintiff has the RFC to perform a full range of work at all exertional levels but with certain nonexertional limitations such as simple, routine tasks and limited public contact. Tr. 22. The nonexertional limitations are supported by the medical evidence and statements the ALJ found credible. Tr. 22.

In support of her position Plaintiff reiterates the arguments made in her earlier challenges to the ALJ's analysis of the medical evidence and witness testimony. As the Court has already concluded, the ALJ properly considered that evidence.

Accordingly, the Court concludes the ALJ did not err

when he assessed Plaintiff's RFC and he accounted for all
credible limitations in his assessment.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the
Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 6ᵗʰ day of December, 2018.

_____
ANNA J. BROWN
United States Senior District Judge